ALBANY,
Oct. 1831.

Tombeckbe
Bank
v.
Stratton.

---

### TOMBECKBEE BANK *vs.* STRATTON, WINTHROP & NILES.

Payment of the *principal* and *interest* of a protested bill of exchange by a *su-rety*, in discharge of his liability, with a reservation of the right by the *holder* to demand payment of *damages* from the drawer, is no bar to an action against the *drawer* for the recovery of such damages, where the obligation of the surety is distinct and independent of that of the *principal,* as in this case, where the surety was a *guarantor*.

Such payment, *it seems*, would have extinguished the demand for damages as against the *surety*.

THIS was an action of assumpsit tried at the New-York circuit, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The action was brought to recover the *damages* upon three bills of exchange, drawn by the defendants, and *protested* for non-payment, the *principal* and *interest* of the bills having, *after*

*protest*, been paid, partly by the drawers and partly by a *surety* of the drawers, with an *express reservation* of the right of the plaintiffs to demand the *damages* of the defendants, made at the time of the payment by the surety. The facts of the case are as follows: The defendants were merchants, doing business at Mobile, under the name and firm of Thomas N. Niles & Co. and at New-York, under the name and firm of Stratton & Winthrop. In October, 1825, the firm at New-York addressed the plaintiffs, engaging to guarantee the acceptance and payment of the bills of Thomas N. Niles & Co. negotiated by the plaintiffs, to the amount of $25,000, and in December, 1825, John Bloodgood, of Mobile, united in the guaranty, by a separate instrument, at the request of Niles, one of the defendants. Three bills of exchange were drawn by Thomas N. Niles & Co. on Messrs. Stratton & Winthrop, dated, one in January, 1826, for $10,000, and another in February, 1826, for $10,000, and a third in April, for $5000; which, accepted by the house in New-York, were negotiated at the Tombeckbe bank, and subsequently protested for non-payment. In March, 1827, the defendants having made several payments on the bills, Bloodgood, the *surety*, paid the balance of *principal* and *interest* due on the three bills, viz. $9833,74, leaving the *damages*, viz. $2500, unpaid, and took up all the securities except bill of exchange for $10,000, drawn in February, 1826, which was retained by the bank for the purpose of enforcing payment of the damages against the defendants, the bank agreeing to release Bloodgood from such claim, but refusing to release the defendants, and reserving their right to demand the damages of them. The judge expressed his opinion that the *principal* and *interest* having been paid, an action could not be maintained for the *damages* upon the protested bills; whereupon the plaintiffs submitted to a nonsuit, with leave to move to set the same aside.

*D. Lord, junior,* for plaintiffs.

*E. Winter,* for defendants.

ALBANY,
Oct. 1831.

Tombeckbe
Bank
v.
Stratton.

*By the Court,* NELSON, J. The first objection urged by the defendants to setting aside the nonsuit is, that the case discloses a loan by the bank to the firm of T. N. Niles & Co., upon the guaranty of Bloodgood alone, as the acceptance of Stratton and Winthrop added nothing to the security, they being holden as drawers; and that therefore the transaction is not to be viewed in the light of a regular negotiation of a bill of exchange in the usual course of business, although assuming that form. It is a sufficient answer to this objection, admitting it to be sound, that it was not taken at the trial. The plaintiffs should have had an opportunity at the trial to have changed the complexion of the case in this respect, if in their power; besides, the objection involves a question of fact, to wit, the nature and character of the transaction, and should have been litigated at the circuit, and passed upon by the jury. That it was not so passed upon, was the fault of the defendants, and they are now too late to raise the objection.

The only question in the case is whether the payment of the *principal* and *interest* upon the three sets of bills by the surety, under the circumstances detailed in the case, operates in judgment of law to extinguish the claim against the defendants for the 10 per cent. damages, or whether it is not to be considered, as it regards them, as a payment upon the general account. This case is supposed by the counsel for the defendants to be governed by the rule of law, that the payment of the principal of a debt operates as an extinguishment of the interest, and bars its recovery in a suit. The analogy between the two cases I think sufficiently strong to justify the application of the rule, unless there is something in the transaction which will warrant the court in making it an exception.

The obligation of the surety was distinct and independent of the defendants, and the surety was of course separately liable to the plaintiffs; payment therefore by him was not a payment by their agent, as supposed by their counsel. He had become charged with the debt as surety, by means of the default of the acceptors, and paid the money exclusively for his own discharge, so far as he and the plaintiffs were concerned. It is true, the payment by the surety so far extinguished the demand, and the plaintiffs could not enforce it against the prin-

cipals; but not upon the ground that it was made by their agent, but because the surety had not only a right independent of any authority from the principals, but was individually bound to make such payment. Neither had the defendants any control over the payments made by the surety. Whether he paid the whole debt, or part of it, or none of it, was altogether immaterial, as it regarded their rights or interests; it neither increased nor diminished the extent of their liability. They were holden for the entire demand to the plaintiffs, or to the surety, if he paid the debt, or to both, if he paid part; and I am unable to discover any right they have to inquire into the arrangements between the plaintiffs and the surety, any further than to see that any payment which he may have made upon the debt has been allowed to them. So far, and so far only, are their interests concerned. To that extent they are liable over to the surety. For the same reason, I consider the *discharge* of the surety by the plaintiffs as in no way affecting the question. They had a right to release him without any payment, and their demand would still be perfect against the defendants. Whatever sum he did pay to be released, the defendants had a right to have applied; beyond that they were not interested. The proposition, therefore, cannot be maintained, that the principal can avail himself of any defence to a demand which the surety may possess; their rights depend upon very different considerations and principles. Admitting, therefore, that without the release, or agreement to release, the payment in this case would have operated to extinguish the debt and all its incidents as far as the surety was concerned, it by no means necessarily follows that the defendants could avail themselves of the like defence; nor is there any thing incongruous or absurd in the exemption of the one and liability of the other.

It was most fully established that the payment by the surety was not designed by either him or the plaintiffs to operate as an extinguishment of the entire claim. Bloodgood, the only witness, expressly swears that he did not understand the bank as accepting the amount from him in full of the claims against T. N. Niles & Co.; on the contrary, he states that such claim was expressly reserved; that the account annexed

to his deposition truly expressed the settlement so far as the bank was affected by it.   On reference to that account, it appears that the payment by the surety was applied upon the general account of the bank against'T. N. Niles & Co.   He further swears that the payment was not to affect the claim of the bank against T. N Niles & Co. any further than that the amount received was to be credited in their account.

The law undoubtedly is, that a debtor owing two distinc t demands, has a right to direct upon which the money shal| be applied ; but I deny that he has a right to direct that the money paid shall be applied upon the *principal*, and not upon the *interest*, or in this case upon the *priucipal and interest*, and not upon the damages.   If the rule contended for by the counsel for the defendants was correct, it would always be in th e power of the debtor to avoid payment of interest or damages. Admitting that such direction had been given by the surety, and that the defendants could avail themselves of it, it is very clear from the evidence in the case it was not assented to by the plaintiffs.   Looking at the substance and meaning of the transaction between the plaintiffs and surety, without regard to technical terms, it is obvious to me that the principal and interest agreed upon between them was a mere mode of expressing or of ascertaining the amount which the one would receive and release the other, without any intent by either that the payment should be received as principal and interest *eo nomine.*

Upon the whole, without pursuing the examination further' I think the plaintiffs are entitled to recover the balance due upon the three set of bills, upon the grounds, 1. That they never have received payment of the principal and interest upon the bills as such from the surety ; 2. If they have, it was solely in discharge of the surety, upon the express condition it should apply only upon the general account against the defendants, and which was acquiesced in by the party making the payment.   If the defendants seek to avail themselves of the transaction with the surety, they must adopt it in all its parts.

Nonsuit set aside, and new trial granted.